UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE CORNUCOPIA INSTITUTE, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) Civil Action No. 16-0654 (RMC) <br> ) |
| AGRICULTURAL MARKETING SERVICE, | ) <br> ) <br> ) |
| Defendant. | ) <br> ) |

**MEMORANDUM OPINION**

The Cornucopia Institute filed a Freedom of Information Act request seeking records from the Agricultural Marketing Service concerning investigations conducted by the National Organic Program of Daniel Lehebauer, Harry Lehenbauer and Diamond D Organics during the Administration of former President Barack Obama. *See* Compl. [Dkt. 1] ¶ 1.

Unhappy with the response it has received, Cornucopia has sued to obtain more records with fewer redactions. Upon review of the entire record, the Court will grant the agency's motion for summary judgment and deny Cornucopia's cross motion for summary judgment.

**I. BACKGROUND FACTS**

The Cornucopia Institute is a public interest farm policy organization, which provides public oversight and research and investigates agricultural issues. The Agricultural Marketing Service (the Service) is an agency within the U.S. Department of Agriculture; it administers programs intended to facilitate the efficient and fair marketing of U.S. agricultural products. The National Organic Program (the Program) is a regulatory program within the Service and is responsible for developing national standards for organically-produced

1

agricultural products. *See id*. The Compliance and Enforcement Division (Enforcement Division) of the Program investigates complaints alleging violations of regulations covering organic foods. It also processes FOIA requests for Service records. *See id*.

The Freedom of Information Act (FOIA), 5 U.S.C. § 552 *et seq.* (2012), provides a means to ask an agency in the Executive Branch of the federal government for copies of records concerning its activities, subject to certain exemptions. *Id.* In its June 16, 2014 FOIA request, Cornucopia asked for "copies of all internal or external correspondence, communications and other documents between the USDA and any outside individual or entity regarding Daniel Lehenbauer, Harry Lehenbauer, and Diamond D Organics (covering the tenure of the Obama administration)." *See* Def.'s Mot. Summ. J. Ex. 1, Declaration of Matthew Michael (1st Michael Decl.), [Dkt. 9-2] at 1. Cornucopia submitted this FOIA request after it saw general references to Diamond D Organics, and its principals, Daniel and Harry Lehenbauer, in records released by the USDA in response to one of its prior FOIA requests. *See* Pl.'s Mot. Summ. J. Attach. 2, Declaration of Mark A. Kastel (Kastel Decl.) [Dkt. 11-2] ¶ 4.

Upon receipt of Cornucopia's request, a search of Program records was conducted by, collectively, Matthew Michael, Director of the Enforcement Division; the Enforcement Division's top FOIA specialist; and the specialist in charge of the investigation into the Lehenbauers and Diamond D Organics. These persons searched "their government-issued computers, the NOP shared-network drive and, because they were aware of a recent investigation responsive to the Cornucopia's request, paper investigative records." 1st Michael Decl. ¶ 6. This search identified 119 pages of records, of which 28 pages were released in full, 78 pages were released in part, and 13 pages were withheld in their entirety. *Id.* ¶ 6; *see also* Def.'s Mot.

Summ. J. Attach. B, FOIA Response of 2/6/15 [Dkt. 9-3]. These records were provided to Cornucopia on February 6, 2015.

Cornucopia administratively appealed the response to its FOIA request on March 18, 2015, arguing that the agency had improperly withheld information under FOIA Exemptions 5, 6 and 7. 1st Michael Decl. ¶ 7. In June 2016, the Service reviewed the 119 pages of responsive records, and "agreed to the discretionary release of additional information in eight (8) pages, previously redacted under FOIA Exemptions 5 and/or 7(E) and released additional information on one (1) page, previously redacted under FOIA Exemptions 2 and 7(E)," but unredacted elsewhere in the released records. *Id.* ¶ 8; *see* Def.'s Mot. Summ J. Attach. D, FOIA Response of 6/15/16 [Dkt. 9-5]. This response was sent to Cornucopia on June 15, 2016.

In addition, Mr. Michael and his specialist/investigator conducted an additional search of the Program's electronic records. This time they searched the Program's hardcopy casefiles, electronic shared drive, and electronic complaint database, as well as the investigator's individual electronic and hardcopy files, Director Michael's electronic and hardcopy files, and the email archives of both the investigator and the Director, which Mr. Michael attests are the only places where such records would be located. *See* Def.'s Reply Ex. 1, 2d Decl. of Matthew Michael (2d Michael Decl.) [Dkt. 14-1] ¶ 4. In this search, they located 21 additional pages of responsive records, which were provided to Cornucopia, with redactions, on August 31, 2016. *Id*.

Thus, in total, the agency located 140 pages of responsive records, of which 39 pages were released in full, 86 pages were released in part and 15 pages were withheld in their entirety. *See id*. There is no dispute concerning these facts. *See* Pl.'s Mot. Summ. J. Ex. 1, Pl.'s Statement of Facts (Pl.'s SOF) [Dkt. 11-1] ¶ 4; Def.'s Mot. Summ. J. [Dkt. 9] at 6.

In this suit, Cornucopia contends that the Service violated FOIA by (1) failing to conduct an adequate search for records; and (2) failing to provide all non-exempt responsive records. *See* Compl. ¶ 23. After more than adequate legal attention, *see* Defendant's Answer [Dkt. 7]; Defendant's Motion for Summary Judgment [Dkt. 9]; Plaintiff's Opposition and Cross Motion for Summary Judgment [Dkt. 11]; Defendant's Reply and Opposition [ Dkt. 14]; and Plaintiff's Reply [Dkt. 17], the matter is ripe for decision.

## II. VENUE AND JURISDICTION

Section 552(a)(4)(B) of the U.S. Code grants this Court subject matter jurisdiction over all actions brought under FOIA, and makes this an appropriate forum for venue purposes. 5 U.S.C. § 552(a)(4)(B) ("On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."); *see Jones v. Nuclear Regulatory Comm'n*, 654 F. Supp. 130, 131 (D.D.C. 1987).

The Court's jurisdiction under FOIA extends only to claims arising from the improper withholding of agency records. *See* 5 U.S.C. § 552(a)(4)(B); *see also Lazaridis v. U.S. Dep't of Justice*, 713 F. Supp. 2d 64, 66 (D.D.C. 2010) (citing *McGehee v. CIA*, 697 F.2d 1095, 1105 (D.C. Cir. 1983)).

## III. LEGAL STANDARDS

FOIA "represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential." *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 925 (D.C. Cir. 2003). Under FOIA,

federal agencies must release records to the public upon request, unless one of nine statutory exemptions apply. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 136 (1975); 5 U.S.C. § 552(b). To prevail in a FOIA case, a plaintiff must show that an agency has improperly withheld agency records. *See Odland v. FERC*, 34 F. Supp. 3d 1, 13 (D.D.C. 2014). The defending agency must demonstrate that its search for responsive records was adequate, that any invoked exemptions actually apply, and that any reasonably segregable non-exempt information has been disclosed after redaction of exempt information. *See id*.

FOIA exempts certain kinds of records from disclosure. The Service cites Exemptions 5, 6, and 7 to explain and support its redactions and withholdings. *See* Def.'s Mot. Summ. J. at 6-18; 5 U.S.C. § 552(b)(5)-(7).

FOIA cases are typically and appropriately decided on summary judgment. *See Sanders v. Obama*, 729 F. Supp. 2d 148, 154 (D.D.C. 2010). Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The party moving for summary judgment "bears the initial responsibility . . . [to] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, a court must draw all justifiable inferences in favor of the nonmoving party and accept the nonmoving party's evidence as true. *See Anderson*, 477 U.S. at 255. The nonmoving party, however, must provide more than a "mere existence of a scintilla of evidence . . . . [T]here must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id*. at 252.

5

## IV. ANALYSIS

Cornucopia challenges both the adequacy of the search for records and the propriety of the exemptions cited by the Service for its redactions and withholdings. The Court will address each in turn.

### A. Adequacy of the Search

The adequacy of an agency search is measured by its reasonableness, which quite naturally depends on the individual circumstances of each case. *See Sanders*, 729 F. Supp. 2d at 154 (quoting *Truitt v. U.S. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)). Under FOIA, any "requester dissatisfied with the agency's response . . . may challenge the adequacy of the agency's search by filing a lawsuit in the district court after exhausting any administrative remedies." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999); *see also* 5 U.S.C. § 552(a)(4)(B). The defending agency then bears the burden of demonstrating "beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995).

An agency may show its search was reasonable, such that summary judgment in its favor is warranted, through an affidavit by a responsible agency official, "so long as the declaration is reasonably detailed and not controverted by contrary evidence or evidence of bad faith." *Sanders*, 729 F. Supp. 2d at 155. Accordingly, affidavits that include "search methods, locations of specific files searched, descriptions of searches of all files likely to contain responsive documents, and names of agency personnel conducting the search are considered sufficient." *Citizens for Responsibility & Ethics v. Nat'l Archives & Records Admin.*, 583 F. Supp. 2d 146, 168 (D.D.C. 2008) (quoting *Ferranti v. BATF*, 177 F. Supp. 2d 41, 47 (D.D.C. 2001)).

The Service contends its search was adequate because the search method used was "reasonably calculated to uncover all relevant documents." Def.'s Reply at 3 (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). The Service relies on two declarations by Program Director Michael, which explain the methods and scope of each search. In his Second Declaration, Mr. Michael explained that the Program searched "the systems where NOP maintained its information on investigations, by using the search terms "Lehenbauer" and "Diamond D." 2d Michael Decl. ¶ 5. Two such searches were performed: The Service conducted the first in a two-week period beginning June 16, 2014, and, after an administrative appeal by Cornucopia, the Service conducted the second from June 18 through June 22, 2016. 1st Michael Decl. ¶¶ 6-9. In the second search, Mr. Michael and his staff "located an additional 21 pages of responsive records related to an earlier investigation of Henry Lehenbauer in 2010 and 2011, including the 2010 suspension notice," all within the two terms of the Obama Administration. 2d Michael Decl. ¶ 6.

Cornucopia does not argue that the searches were in bad faith, but, rather, that the Service has failed to establish the adequacy of the searches because (1) its description of its search actions was conclusory, and (2) it did not undertake follow-up actions after its initial search identified additional responsive records. *See* Pl.'s Reply at 5-6.

Upon review of the entire record, including both of Mr. Michael's Declarations, the Court does not agree. FOIA does not require an agency to submit an affidavit that "set[s] forth with meticulous documentation of the details of an epic search for the requested records." *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982). The two Michael Declarations explain in sufficient detail the search methods, including search terms, used to search where responsive records would most likely be found, and why those locations were the primary locations for

7

relevant records. *See* 2d Michael Decl. ¶¶ 4-7. Cornucopia's argument that the description of the second search is conclusory and vague because Mr. Michael failed to explain "how they applied those two search terms," *See* Pl.'s Reply at 2, cannot prevail because Cornucopia suggests no greater specificity needed to understand and none is required. Whether further records might exist is not the test to measure the adequacy of a search. "[M]ere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994); *see Sanders*, 729 F. Supp. 2d at 156 (finding search adequate because affidavit explained complete process of search, including search terms used and locations searched, and thus demonstrated a reasonably calculated search). Here, too, the Service has submitted detailed declarations explaining its complete search processes and the logic behind them. *See* 1st Michael Decl. ¶¶ 6-9; 2d Michael Decl. ¶¶ 4-7.

Cornucopia also attacks the initial search conducted by Mr. Michael and his staff because they allegedly failed to follow up on clear leads to records in other locations. Failure to follow-up renders a search inadequate only when an agency fails to search places "likely to turn up the information requested." *Valencia-Lucena*, 180 F.3d at 327 (finding search inadequate where agency did not search records center even when it knew it might contain responsive documents). Whatever merit this argument might have had, it is overcome by the fact of, and details surrounding, the second search. The fact that the second search identified further records does not invalidate either search. "The issue is not whether any further documents might conceivably exist but whether the government's search for responsive documents was adequate." *Perry v. Block*, 684 F.2d at 128. Mr. Michael's dual declarations suffice to establish that he and

8

his investigating specialist logically identified, and searched, the most likely places to contain responsive records.

### B. Reliance on FOIA Exemptions

To prevail on a summary judgment motion in a FOIA case, a defending agency must demonstrate that any withheld information is exempt from disclosure, and that the agency segregated non-exempt materials. *See* 5 U.S.C. § 552(a)(4)(B). To meet this standard, agencies may provide "a relatively detailed justification through the submission of an index of documents, known as a *Vaughn* Index, sufficiently detailed affidavits or declarations, or both." *James Madison Project v. U.S. Dep't of Justice*, 208 F. Supp. 3d 265, 285 (D.D.C. 2016) (quoting *Ctr. for Int'l Envtl. Law v. U.S. Trade Representative*, 237 F. Supp. 2d 17, 22 (D.D.C. 2002)).

#### 1. Exemption (5)

FOIA Exemption 5 protects "inter-agency or intra-agency memorandum or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption shields documents that would disclose the deliberative process of agency decision-making. *See Playboy Enters., Inc. v. U.S. Dep't of Justice*, 677 F.2d 931, 935 (D.C. Cir. 1982). The "deliberative process" privilege of Exemption 5 protects from disclosure "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." U.S. *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. at 149).

To fall within the deliberative process privilege, records must be both (1) predecisional and (2) deliberative. *See Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 39 (D.C. Cir. 2002). A document is predecisional if it was "prepared in order to assist an agency

9

decisionmaker in arriving at his decision," and deliberative if "the materials . . . bear on the formulation or exercise of agency policy-oriented judgment." *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1434-35 (D.C. Cir. 1992). These requirements stem from the purpose of this privilege, which is to safeguard communication between subordinates and superiors, and prevent exposure of "an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Formaldehyde Instit. v. U.S. Dep't of Health and Human Servs.*, 889 F.2d 1118, 1122 (D.C. Cir. 1989); *Wilderness Soc'y v. U.S. Dep't of Interior*, 344 F. Supp. 2d 1, 10 (D.D.C. 2004).

The Service argues that it properly withheld records under Exemption 5 that were predecisional, as they contained recommendations and options for shaping the course of the investigation, and deliberative, as they discussed opinions and proposed alternatives between an investigator and her supervisor. *See* Def.'s Reply at 12. Cornucopia objects to the withholding of three pages of responsive records, arguing that the Service failed to establish a nexus between the withheld information and the agency's decision-making processes. Cornucopia asks the Court to review these pages *in camera*. *See* Pl.'s Reply at 9.

No *in camera* review of the three documents redacted under Exemption 5 is necessary, because the Service has properly demonstrated that these records, which include the advisory opinions and recommendations for the course of action on the Lehenbauer investigation, clearly fall under the deliberative process privilege. As the Service explained in its *Vaughn* Index, these three records discussed the "next steps and proposed courses of action in the investigation." Def.'s Mot. Summ. J. Attach. G, Service *Vaughn* Index [Dkt. 9-8] at 15-26. The Service has provided sufficient justification for withholding documents under the deliberative

10

process privilege. *See Sears*, 421 U.S. at 153 (explaining Exemption 5 calls for withholding papers which reflect the agency's group thinking).

Cornucopia relies on *Army Times Publishing Co. v. U.S. Dep't of Air Force*, 998 F.2d 1067, 1071-72 (D.C. Cir. 1993), but that opinion of the D.C. Circuit is distinguishable from the case at hand. In *Army Times*, the Air Force withheld almost 6,000 pages of records with little or no explanation in the accompanying *Vaughn* Index. In stark contrast, the Service withheld only three records and reasonably explained each record and why it was withheld. *Compare id.* (requiring *in camera* review to determine if portions of records were subject to Exemption 5); *with* Michael 1st Decl. ¶ 16 (explaining withheld documents included investigator's notes, chronology of the investigation, and recommendations drafted for the supervisor's consideration), *and Vaughn* Index at 15-26 (revealing purpose of records withheld under Exemption 5). All three documents withheld under Exemption 5 were related, *see* 1st Michael Decl. ¶ 16; *see also* Def.'s Reply at 14. In all, the Service has thoroughly explained why these three records are protected by the deliberative process privilege under Exemption 5.

**2. Exemption 7(C)**

Exemption 7(C) permits agencies to withhold records when its disclosure "could reasonably be expected to constitute an unwarranted invasion of privacy." 5 U.S.C. § 552(b)(7)(C); *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011). To determine whether information falls under either of these exemptions, a court must first identify both the privacy interests at stake and the public interest in disclosure, and then balance these interests against each other. *See Citizens for Responsibility and Ethics in Washington v. U.S. Dep't of Justice*, 746 F.3d 1082, 1091 (D.C. Cir. 2014); *see also Comput. Professionals for Soc. Responsibility v. U.S. Secret Serv.*, 72 F.3d 897, 904 (D.C. Cir. 1996).

The public interest is not measured by the "general public interest in the subject matter of the FOIA request but rather on the incremental value of the specific information being withheld." *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003). When considering privacy interests, this Circuit has "consistently supported nondisclosure of names or other information identifying individuals appearing in law enforcement records, including . . . witnesses and informants." *Id*. Individuals' privacy interests are so great that the D.C. Circuit has adopted a categorical rule that "unless access to names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991); *see also Canning v. U.S. Dep't of Justice*, No. CV 11-1295(GK), 2017 WL 2438765, at *8 (D.D.C. June 5, 2017) (applying *SafeCard Servs.*).

The Service objects that Cornucopia has failed to identify a substantial public interest that would be served by releasing the names and identifying information of the third-party persons whose names are in the files of the Lehenbauer investigation. It adds that, even if the Court were to find some public interest, any such interest outweighed by these persons' privacy interests in their personal information. *See* Def.'s Reply at 9-10. Cornucopia insists that there is public interest in "seeking review of the organic fraud certificate investigation records" and a "need for public oversight to redress inappropriate governmental actions." Pl.'s Reply at 15. Cornucopia further argues that the Service has failed to meet its burden for withholding material under Exemption 7(C) and specifically objects to the redaction of the names of individuals who were involved in its investigation. *See id*. at 14-16.

Cornucopia's argument is too imprecise in light of the strictures of precedent in this area. While the Court does not discount a general public interest in full disclosure, that general interest is insufficient to allow the release of identities and personal information of third-party individuals named in the files of the Lehenbauer investigation. This Circuit places a strong priority on maintaining individual privacy rights, unless certain kinds of agency misconduct requires their relaxation. Cornucopia fails to grapple with this precedent and fails to specify anything more than the public's general interest. This does not suffice. *See U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989) (holding that public interest is "not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct"). There is no indication, for example, that the Service redacted anything broader than personally-identifying information of individuals. *Cf. Citizens for Responsibility and Ethics in Washington*, 746 F.3d at 1094 ("Although *SafeCard* may authorize the redaction of the names and identifying information of private citizens mentioned in law enforcement files, it does not permit an agency to exempt from disclosure *all* of the material in an investigatory record . . . ." (internal quotations omitted)). Similarly, Cornucopia provides no evidence of agency misconduct. *See SafeCard Servs.*, 926 F.2d at 1206 ("No such evidence of agency misconduct appearing in this case, the agency need not disclose the names and addresses redacted from the documents at issue here.").

The balancing test therefore weighs in favor of the individual privacy interests, and ultimately, the Service's withholding of such personally-identifying information under 7(C).[1]

**C. Reasonably Segregable, Nonexempt Information**

While an agency may properly withhold records or parts of records under FOIA exemptions, it must release "any reasonably segregable portions" of responsive records that do not contain exempted information. *Schoenman v. FBI*, 575 F. Supp. 2d 136, 155 (D.D.C. 2008); 5 U.S.C. § 552(b). The agency bears the burden of demonstrating that all reasonably segregable portions of a record have been disclosed, and may do so by "offering an affidavit with reasonably detailed descriptions of the withheld portions of the documents and alleging facts sufficient to establish an exemption." *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008).

The Service argues that it properly segregated exempt material from the released records, as it fully explained in Mr. Michael's Declarations and the *Vaughn* index. *See* Def.'s Reply at 20. Cornucopia does not dispute this point. Nonetheless, the Court has an affirmative duty to conduct an analysis of the segregability requirement. *See Billington v. U.S. Dep't of Justice,* 233 F.3d 581, 586 (D.C. Cir. 2000). It finds that the Service has acted appropriately in

---

[1] Exemption 6 of FOIA protects information compiled for law enforcement purposes, the disclosure of which "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) has a lower standard, permitting agencies to withhold records when its disclosure "could reasonably be expected to constitute an unwarranted invasion of privacy." 5 U.S.C. § 552(b)(7)(C); *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011) (Exemption (7)(C) "establishes a lower bar for withholding material" than Exemption 6). Because all of information withheld under Exemptions 6 and 7(D) is also properly withheld under Exemption 7(C), the Court does undertake a separate analysis as to whether the responsive information is also properly withheld under Exemptions 6 and 7(D). *See Utahamerican Energy, Inc. v. U.S. Dep't of Labor*, 685 F.3d 1118, 1123 (D.C. Cir. 2012) (explaining that the government need only prevail on one exemption). Cornucopia's objection to the Service's redaction of three records, R-2, R-32, R-36, under Exemption 7(E) is without merit because these records are properly exempted under 7(C) and (b)(5). *See id.*, 685 F.3d at 1123.

separating and releasing such information as was not exempt from disclosure under a FOIA exemption.

The Service withheld 15 pages in their entirety, except for a signature block. *See* 1st Michael Decl. ¶ 14. Each of these 15 pages contained only personally identifying information, and thus included no reasonably segregable, nonexempt information that could be released. *Id.* Further, the Service accounted for each redaction in the records that were released in its *Vaughn* Index, specifying which exemption applied to each redaction in a line-by-line review. *See* Vaughn Index at 9-15; 17-21; 23-24; 29-34; 36-37; 41-42; 48-49; *see also Schoenman*, 575 F. Supp. 2d at 155 (finding agency met its burden of showing it released all reasonably segregable information because it did not withhold documents in their entirety and explained why information was properly withheld under named exemptions).

## V. CORNUCOPIA'S REQUEST FOR *IN CAMERA* REVIEW IS DENIED

Trial courts are afforded broad discretion to "examine the contents of" requested documents "in camera to determine whether such records or any part thereof shall be withheld." *Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 996 (D.C. Cir. 1998); 5 U.S.C. § 552(a)(4)(B). However, because *in camera* review poses a potentially onerous burden on the Court, "[i]f the affidavits provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith, then summary judgment is appropriate without *in camera* review of the documents." *Quinon v. FBI*, 86 F.3d 1222, 1227 (D.C. Cir. 1996) (quoting *Hayden v. Nat'l Sec. Agency/Cent. Sec.y Serv.*, 608 F.2d 1381, 1387 (D.C. Cir. 1979)).

Cornucopia asks the Court to review *in camera* the 140 pages of responsive records released by the Service in part to determine if it properly applied the FOIA exemptions

and if there is non-exempt information that should be released. Because this case is not one where the agency's declarations are "insufficiently detailed to permit meaningful review of exemption claims," *in camera* review is unnecessary. *Plunkett v. U.S. Dep't of Justice*, 11-cv-0341, 2015 WL 5159489, at *12 (D.D.C. Sept. 1, 2015) (quoting *Quinon*, 86 F.3d at 1228) (declining in camera review because agency's affidavits sufficiently explained its reasons for redacting information under FOIA exemptions).

## CONCLUSION

For reasons stated above, the Court will grant the Service's Motion for Summary Judgment [Dkt. 9]. Cornucopia's Cross Motion for Summary Judgment [Dkt. 10] will be denied. A memorializing order accompanies this memorandum opinion.

Date: August 16, 2017

/s/
ROSEMARY M. COLLYER
United States District Judge